## Cincinnati, New Orleans & Texas Pacific Railway Company v. Jones' Administrator.

(Decided November 19, 1915.)

### Appeal from McCreary Circuit Court.

1. Railroads—Trespassers—Duty.—The only duty which a railroad company owes to a trespasser is to use ordinary care in the exercise of all reasonable means at its command to avoid injuring him after his peril is discovered.

2. Railroads—Trespassers—Duty.—Where the presence of a trespasser is discovered on the track about 396 feet distant, ordinary care on the part of the company to avoid injuring him requires not only the application of the brakes but the sounding of the whistle.

3.  Railroads—Evidence.—On the issue whether or not the whistle
    was blown after the presence of a trespasser was discovered on
    the track, evidence of persons, who were in a position to hear the
    signal if it had been given, that they did not hear the signal,
    'presents an issue of fact triable by the jury and is sufficient to
    sustain a verdict.
4.  ·· Railroads—Trespassers—Contributory Negligence.—The contribu-
    tory negligence of a trespasser in going upon a railroad track and
    not heeding the approach of a train, will not defeat a recovery,
    for, notwithstanding his contributory negligence, a failure on the
    part of the company to use ordinary care in the exercise of all
    reasonable means at its command to avoid injuring him after his
    peril is discovered, will render the company liable.

EDWARD COLSTON, JOHN GALVIN and TYE, SILER & GAT-
LIFF for appellant.

R. L. POPE, W. F. HINKLE and ROSE & POPE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Affirming.

In this action by the administrator of William Jones
against the Cincinnati, New Orleans & Texas Pacific
Railway Company to recover damages for his death,
there was a verdict and judgment in favor of plaintiff
for $1,500. The railroad company appeals.

The only ground urged for reversal is the failure of
the trial court to give a peremptory instruction in favor
of the defendant.

The facts are these : Jones was killed at 6:15 A. M.,
June 26, 1913, by engine Number 922, extra, which at
the time was pulling a freight train consisting of three
loaded cars and forty-two empty cars. The accident
occurred between the towns of Silverville and Pine Knot,
which are located about two miles apart. At the place
of the accident the defendant's road is double tracked.
The east track is called the north-bound main, and the
west track is called the south-bound main. Trains go-
ing north run on the north-bound main. The train which
struck decedent was going north at the rate of 35 miles
per hour. Decedent's home was east of Silverville. De-
cedent had left his home and walked to the railroad,  ·
which runs to the county road. After reaching the rail-
road he proceeded north on his way to Tow Wad mines,
a mining camp south of Pine Knot. The county road
runs parallel with the railroad from Silverville to the
place where Jones was going to work. On each side of

the railroad was a wire fence, and it was the purpose of decedent to leave the railroad at a point three or four hundred yards north of where he was struck. Just before reaching the point where decedent was killed there is a sharp curve on the railroad, which is estimated to be from 14 to 17 rail lengths, or a distance of from 462 feet to 561 feet, from the place where the accident occurred. The evidence shows that when the engineer discovered decedent on the track the engine was about 12 rail lengths, or 396 feet, distant from decedent. It further appears that a train like the one in question could not be stopped within less than from 900 to 1,000 feet, and that ordinarily it would require from 1,400 to 1,600 feet to stop such a train. The engineer said that when he discovered decedent he immediately sounded the alarm and put on the emergency brakes. He did everything in his power to stop the train, but it was absolutely impossible to do so within the short distance that lay between him and the decedent. However, for plaintiff a number of witnesses testified that they had their attention directed to the train and were in a position to hear, and did not hear any alarm blast until after the train had stopped.

It may be conceded that the evidence fails to show that the track at the place of the accident was used by the public in such large numbers as to impose on the company the duty of having the train under reasonable control, and of keeping a lookout and giving timely warning of its approach. In other words, decedent was a trespasser, and, that being true, the company owed him no duty other than to use ordinary care in the exercise of all reasonable means at its command, consistent with the safety of the train, to avoid injuring him after his peril was discovered. C. & O. Ry. Co. v. Montjoy's Admr., 148 Ky., 279.

The company insists that as the engineer says that he gave the alarm whistle and then applied the brakes in emergency, and as the evidence conclusively shows that the train could not possibly have been stopped in time to prevent the injury, the case is one calling for a peremptory in its favor. It may be conceded that the train could not have been stopped in time to prevent the accident, and if the failure to stop the train were the only negligence relied on, a peremptory should have gone. But plaintiff relies on the fact that the engineer

failed to give any signal of the train's approach after discovering decedent's presence on the track. In view of the short distance between the train and the decedent after his peril had been discovered, and the impossibility of stopping the train in that distance, it is manifest that the sounding of the whistle was a more effective means to avoid injury than the application of the emergency brakes, and unless the engineer gave the alarm it cannot be said that he used ordinary care in the exercise of all reasonable means at his command, consistent with the safety of the train, to avoid injuring decedent after his peril was discovered. C., N. O. & T. P. Ry. Co. v. Blankenship, 157 Ky., 702; Creager's Admr. v. I. C. R. R. Co., 134 Ky., 548. The case, therefore, turns on whether or not the alarm blast was sounded. The engineer says emphatically that it was. On the other hand, Henry Vahle, Mrs. Gillimore, Burrel Wilson, Mary Davenport, Bob Davenport, and Cal West, all say that they were in the vicinity of the scene of the accident and had their attention directed to the train; that they knew what an alarm whistle was, and did not hear the alarm whistle sounded until after the train had stopped. It is the rule in this State that evidence to the effect that the blowing of a whistle was not heard by persons who were in a position to hear it if it had been blown, though of a negative character, presents an issue of fact triable by the jury, and is sufficient to sustain a verdict. C. & O. Ry. Co. v. Nipp's Admx., 125 Ky., 49, 100 S. W., 246, 30 Ky. Law Rep., 1131; L. & N. R. R. Co. v. Molloy's Admx., 32 Ky. Law Rep., 747; C. & O. Ry. Co. v. Brashear's Admx., 124 S. W., 278. Unless we depart from this ruling, which we have no inclination to do, it cannot be said, as a matter of law, that the signal of the train was sounded after the peril of decedent was discovered. Under the circumstances, the question was for the jury. The fact that decedent was guilty of contributory negligence in going upon the track and in failing to heed the approaching train, is not sufficient to defeat a recovery, for, notwithstanding his contributory negligence, a failure on the part of the company to use ordinary care in the exercise of all reasonable means at its command to avoid injuring him after his peril is discovered, will render the company liable. C. & O. Ry. Co. v. Montjoy's Admr., *supra.* It follows that defendant's motion for a peremptory instruction was properly overruled.

Judgment affirmed.