## L. & N. R. R. Co. v Hunt's Admr, et al.

(Decided March 15, 1911.)

### Appeal from Rockcastle Circuit Court.

1. Railroads—Flagging Train—Safety of Flagman.—When a flagman who is sent out to flag an approaching train sits down on the side of the track and goes to sleep, the men in charge of the train which he is sent out to flag owe him no duty except to use reasonable care for his safety after they know his danger.

2. Person on Track—Duty of Engineer.—The engineer who sees a man sitting on the side of the track has a right to presume that he will get off and is not required to check the speed of train or take any steps for his safety until the circumstances known to him would be sufficient to apprise a person or ordinary prudence that the man was unconscious of the coming of the train.

3. Same—Contributory Negligence.—If a flagman sitting at the side of the track asleep is waked by the coming train and then runs upon the track to flag it when it is right upon him, and is thus killed, his death is due to his own contributory negligence, and he can not recover.

J. W. BROWN, J. W. ALCORN and BENJAMIN D. WARFIELD for appellant.

C. C. WILLIAMS, ROBERT HARDING and GREENE & VAN-WINKLE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Walter Hunt was a brakeman on a freight train of the Louisville & Nashville Railroad Company and was killed at Gum Sulphur on February 13, 1908. This action was brought by his personal representative to recover for his death, and in the circuit court, the plaintiff recovered $7,000.00. The railroad company appeals.

The first question made on the appeal is that on the plaintiff's evidence the court should have instructed the

jury peremptorily to find for the defendant. The facts shown by the plaintiff are these: When Hunt's train reached Gum Sulphur, it took a siding there to allow a passenger train to pass it. The siding was not long enough to hold the freight train, and some of the cars were on the main track after the engine had pulled in on the siding. So Hunt was sent forward with a flag to flag the coming passenger train. Four witnesses were introduced by the plaintiff as to how he was killed. H. M. King, who was sitting on his porch about 250 yards from where Hunt was killed, thus tells what occurred:

"He got down right in front of my door with his flag in his hand and went down ten or twelve telegraph spaces; a red flag, a danger signal; and set down on the rail with his flag in his left hand, facing the east. That would throw the flag north, the way the train was coming; part of the flag was out; it wasn't all out. I then went in the house. He was sitting on the track. I cannot say whether he was asleep or awake when I last saw him."

Porter Botkins who was in the depot made this statement:

"I saw him going down the railroad with his flag, and then I never noticed him any more until just before the train hit him. The train was coming up after it blowed for the crossing down there, and I went to the door and was looking down that way and saw him then. He was sitting down on the rail and when the train came up a cut it seemed right against him. He jumped up and started up like over to the opposite side of the track from him, and then started back and it struck him. The flag was kinder rolled up when he had it in his hand; I never saw it open."

On cross examination the witness stated it was five or ten minutes after Hunt went down the track before the passenger train came. The witness heard the train blow and came out of the depot and saw the man sitting there a minute or two before the train reached him. Jack King, who was at the depot, makes practically the same statement as to the flag, but says that Hunt did not change his position or move from his seat on the rail before the train struck him. Ed Prewitt, who was also at the depot, and makes practically the same statement as to the flag, says this:

"He heard the train and it was so close on him that he started to cross, and started to make another step next to the rail, and about that time, the train hit him."

On cross examination he says this:

"He started to the north and got about two steps and turned, and just the least little bit, and then turned and went back south with his flag in his hand in front of the train, and while he was going that way, the train struck him."

The proof for the plaintiff also showed that Hunt had not gone down the track as far as he was required to go by the rules of the company to flag the passenger train, and that he had not placed out torpedoes as he was required to do on the rails. He had been sent out to flag the passenger train to prevent a collision between that train and his train, and the sum of the evidence for him is that without going as far as he was required by the rules to go, and holding his flag in his hand about half unfurled, he sat down on the track and went to sleep, that while he was so sitting there the passenger train came up and he was killed.

In Coleman v. Pittsburg, et al., R. R. Co., 63 S. W. 39, a flagman stationed at a crossing to watch the crossing was himself killed by a train when the evidence did not show the trainmen were aware of his danger. Holding that the circuit court should have given the jury a peremptory instruction to find for the defendant, the court said:

"A servant of a steam railroad company, who is charged with an important and particular duty to his master and to the public, will not be allowed to profit by any neglect of that duty. Not only the fairest principles of justice between men would prevent it, but also public policy forbids that a premium should be placed by the law upon the neglect of such duty; and such would be done did the courts allow a recovery by the servant from the master for the former's injury, which could not have resulted save from his neglect of such duty."

In Conniff v. Louisville, et al. R. R. Co., 124 Ky. 763, where the facts were similar to those in the Coleman case, the court followed and approved that case. In Wickham's Admr. v. L. & N. R. R. Co., 135 Ky. 288, a watchman at a street crossing was killed by a train, and applying the principles laid down in the preceding cases, we held that he could not recover. In the case at bar

Hunt was struck by the very train which he had been sent out to flag. It was running on time and came when it was expected; his being struck by the train was due to his neglect of his duties. If by reason of his neglect the two trains had collided, manifestly the defendant would be justly chargeable with his negligence as to a person so injured; and, certainly, Hunt, the person who was thus negligent, cannot recover of the company for an injury which he received by reason of his own neglect of duty. On the plaintiff's evidence, the court should have instructed the jury peremptorily to find for the defendant, the plaintiff's evidence showing no negligence on the part of the defendant.

It is insisted, however, for the plaintiff that in all the cases referred to, the rule is laid down that the defendant was liable to the watchman, if his peril was discovered by those in charge of the incoming train, and they, after so discovering his peril, failed to use ordinary care to avoid injury to him. This is true, for however negligent Hunt may have been, it was incumbent on those managing the incoming train to use due care for his safety after they discovered the peril in which he was placed. He could not complain of the speed of the train, but if they in fact saw him and perceived his peril, they were bound to use reasonable care for his safety. The proof for the defendant by the engineer, the fireman and three other witnesses was to the effect that the track was straight; that Hunt was seen sitting on the side of the track some distance before the train reached him; that the engineer reduced the speed of his train but just before the train got to Hunt, he got up and moved off the track; that the engineer then released his brakes, and after he had done this, Hunt suddenly rushed on the track just in front of the train, and too close to it for the engineer to avoid striking him.

When the engineer saw Hunt sitting on the side of the track, he had a right to presume that he would get off before the train reached him, and he was not required to take steps to check his train until from the circumstances, a person of ordinary prudence situated as he was, would conclude that Hunt was unconscious of the approaching train. (Johnson v. L. & N. R. R. Co., 91 Ky. 651; Lingenfelter v. L. & N. R. R. Co., 9 R., 116; Nichols v. L. & N. R. R. Co., 9 R., 702; France v. L. & N. R. R. Co., 15 R., 244; Embry v. L. & N. R. R. Co., 36 S. W., 1123; Murray v. So. R. R. Co., 140 Ky., 453.) In

so far as the instructions of the court did not conform to the principles we have laid down, they were erroneous.

While there is one witness for the plaintiff who did not see Hunt get up before the train reached him, the other two witnesses for the plaintiff did see him get up, and described what he did. The only difference between their testimony and the testimony of the five witnesses for the railroad company is that the railroad company's witnesses say that Hunt first went from the track, and then rushed back upon it; while the two witnesses for the plaintiff testify that he went on the track from the place where he was sitting, and then turned and tried to come back and was thus struck by the train. It is apparent from all the evidence that Hunt lost his life by his going upon the track just in front of the approaching train; and that he thus went upon the track too close to it for any human agency to save him. Apparently he had dropped asleep, and when awakened by the train, did not realize the danger of rushing on the track so close in front of it. But this was his own wrong and the company should not be held responsible for it. Under all the evidence we do not think the verdict should stand. When the company sent out a flagman to watch for the coming train, and warn it of the danger, it was not incumbent on it to send along another man to watch for his safety. It was his duty to watch for the train and keep out of its way. He should have displayed his flag and should not have run on the track to be struck by the train he was sent out to flag. When he knew the train was coming, he was guilty of contributory negligence in rushing on the track immediately in front of the train, and the court should have so instructed the jury. His conduct can reasonably only be explained on the ground that he was asleep, when he should have been watching for the train.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.